UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 23-cr-69-CKK |
| | : | |
| **ISAAC THOMAS,** | : | |
| Defendant. | : | |

**NOTICE OF INTENT TO USE
<u>PRIOR ACT EVIDENCE UNDER FEDERAL RULES OF EVIDENCE 404(b)</u>**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Notice pursuant to its obligation under Fed. R. Evid. 404(b)(3). In an indictment filed March 8, 2023, Isaac Thomas is charged with committing ten criminal acts on January 6, 2021. ECF No. 11. During the government's case-in-chief, it intends to present evidence of interactions between Mr. Thomas and law enforcement officers from the Maumee Police Division in the city of Maumee, Ohio, which occurred in the lobby of a hotel on December 28, 2020, while Mr. Thomas travelled to Washington D.C.

**I.      Conduct on January 6, 2021.**

Isaac Thomas was one of the first individuals to enter the restricted area around the United States Capitol on January 6, 2021. At approximately 12:55 p.m., Mr. Thomas moved past a line of signage—and a row of law enforcement officers—near Peace Monument. Mr. Thomas then walked down the Pennsylvania walkway until he was again stopped by law enforcement officers. At approximately 12:58 p.m., Mr. Thomas climbed over a half-wall separating the West Plaza from the front lawn. Mr. Thomas then made his way past a black half-fence and alongside officers with the United States Capitol Police attempting to form a perimeter.

He then swung flag poles at two separate officers from the United States Capitol Police. Before striking the first officer, Mr. Thomas yelled, "I will whack you upside your head with this pole!" Before striking the second officer, Mr. Thomas yelled, "Guys! Don't let them arrest him!"

Mr. Thomas also entered the Capitol Building.  Inside the Capitol, Mr. Thomas pushed against a line of officers with the Metropolitan Police Department assisting the Capitol Police in clearing the area near the old Senate Chamber. After the failed attempt to remove the line of police, Mr. Thomas yelled, "Ya'll are all going to pay for that. You'll see." As the government will prove, these acts were intentional and linked to his overarching goal on January 6, 2021— corruptly interfering with Congress's attempt to certify the 2020 Presidential Election.

At trial, Mr. Thomas's intent will be shown in part by presenting statements he made within office space designated for the Speaker of the House. Mr. Thomas stated: "we are sitting in the Speaker of the House's Office because umm the United States of America thinks we were playing. When we came up with four million at the doorstep, and came into Nancy Pelosi's . . . and we said 'Fuck This we ain't' . . . Do not let them take our country. Mike Pence failed us today. Ya'll better take your country back. Take your freedom back for the sake of your families and your children!" These statements, intrinsically intertwined with his actions on January 6, are direct evidence of his intent that day January 6, 2021.

II.     **Conduct before January 6, 2021.**

The government also intends to prove Mr. Thomas's intent by presenting evidence of interactions he had with law enforcement in the city of Maumee. On December 28, 2020, on his way from Flint, Michigan to Washington, D.C., Mr. Thomas stopped at a hotel in Maumee, Ohio, and was unable to obtain a room for the evening. Mr. Thomas refused to leave the hotel, which caused hotel staff to call for police intervention. When police arrived, Mr. Thomas began

to argue with police. He demanded to speak to a hotel supervisor, and then demanded to speak to a police sergeant.

The officer with the Police Division of the City of Maumee attempted to explain to Mr. Thomas that the hotel is a private business, and that the hotel can refuse service. Mr. Thomas continued to refuse and did not leave the premises. A second officer then arrived and continued to ask Mr. Thomas to leave. Mr. Thomas explained to the officers that Thomas's constitutional rights were being violated and refused to follow their directions. Mr. Thomas argued that he had a constitutional right to speak to a sergeant and that the officers' directions to leave the hotel—and leave the sidewalk surrounding the hotel—would contravene Mr. Thomas's own constitutional rights to demand service and speak to a decision-maker at the hotel.

### III.    Admissibility of prior acts to prove conduct on January 6, 2021

Federal Rule of Evidence 404(b) permits evidence of "other crimes, wrongs, or acts" to be admitted for "purposes unrelated to the defendant's character or propensity to commit crime, such as 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *United States v. Bowie*, 232 F.3d 923, 926 (D.C. Cir. 2000) (quoting Fed. R. Evid. 404(b)). Rule 404(b) is a rule of "inclusion rather than exclusion." *Id*. at 929.

Specifically, "[a]lthough the first sentence of Rule 404(b) is 'framed restrictively,' the rule itself 'is quite permissive,' prohibiting the admission of 'other crimes' evidence 'in but one circumstance' — for the purpose of proving that a person's actions conformed to his character." Id. at 929-30 (quoting *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc) ("*Crowder II*")); *accord United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) ("[A]ny purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is

3

not offered solely to prove character") (quoting *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (emphasis in original)).

There is a two-pronged test for determining whether evidence of prior crimes is admissible under Rule 404(b). First, the evidence must be "probative of a material issue other than character." *Miller*, 895 F.2d at 1435 (citation omitted). Second, the evidence is subject to the balancing test of Federal Rule of Evidence 403, which renders it inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value. *Id.* Furthermore, it is not enough that the evidence is simply prejudicial; the prejudice must be "unfair." *Cassell*, 292 F.3d at 796 (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) for the proposition that "[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'"); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("[T]he Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweigh[s] the evidence's probative value." (citations and punctuation omitted) (emphasis in original)).

The government intends to introduce Mr. Thomas's interactions with Maumee Police to show intent, knowledge, and absence of mistake or accident. Mr. Thomas is charged with corruptly obstructing Congress's role in certifying the 2020 Presidential Election. 18 U.S.C. § 1512(c)(2). Further, Mr. Thomas is also charged with interfering with law enforcement during their lawful duties during a civil disorder. 18 U.S.C. § 231(c)(3). And the charge under 18 U.S.C. § 1752(a)(2) requires the government to prove his intent to disrupt Government business that day.

The interaction with the Maumee police goes to his intent. During the interaction, Mr. Thomas made statements indicating a belief that he had a constitutional right to resist the police.

The government intends to show that, on January 6, Mr. Thomas again believed that he thought his constitutional freedoms were at stake, and that he was entitled to resist police who stood in his way. In other words, that his actions on January 6, 2021, were more likely to be *intentional* given this prior act of defiance.

Further, this prior interaction makes it more likely that Mr. Thomas *knew* the role of police and what it means to interact with them and makes it less likely that Mr. Thomas's crimes were committed through mistake or accident.

The evidence is also admissible as inextricably intertwined. The government should be able to present evidence of how Mr. Thomas came to be in Washington, D.C. on January 6, which includes his travel from Flint. The effort Mr. Thomas expended to travel to D.C., and the forcefulness of his interactions with those he perceived to stand in his way, is evidence of what he believed was at stake – and therefore of his motive to take illegal action to stop the election from being "stolen."

In *United States v. Long*, 328 F.3d 655 (D.C. Cir 2003), the Court of Appeals upheld admissions of prior acts, reasoning, "The other activity need not have resulted in a charge or conviction; . . . or the conduct may have been entirely lawful. What matters is that the evidence be relevant 'to show a pattern of operation that would suggest intent' and that tends to undermine the defendant's innocent explanation." *Long*, 328 F.3d at 661 (abrogated on other grounds) (quoting 2 Weinstein's Federal Evidence § 404.22[1][a])).

In the present case, Mr. Thomas's actions on December 28, 2020, provide a connection to the charged offenses to throw light upon Mr. Thomas's intent on January 6, 2021.

Turning to the second step of the inquiry, the evidence easily passes Rule 403's balancing test.  It is particularly probative of Mr. Thomas's intent because of its temporal connection to January 6; the interaction occurred while Mr. Thomas was on his way to D.C.  The nature of the action—an argument with the police—is not so prejudicial the way, for example, a previous criminal act might be.  And the Court can limit any unfair prejudice through a limiting instruction.

### IV.     Conclusion

Fed. R. Evid. 404(b)(3) requires the prosecution to "provide reasonable notice," articulate "the permitted purpose," and "do so in writing before trial." In line with this Court's previously entered scheduling order, ECF No. 97, the government provides this notice of prior acts evidence to be introduced at Mr. Thomas's trial.

                                                Respectfully Submitted,

                                                MATTHEW M. GRAVES
                                                United States Attorney
                                                D.C. Bar No. 481052
                                                /s/ *Adam M. Dreher*
                                                ADAM M. DREHER
                                                Assistant United States Attorney
                                                Michigan Bar No. P79246
                                                601 D St. N.W.
                                                Washington, D.C. 20530
                                                (202) 252-1706